**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| (1) SHELTER MUTUAL INSURANCE COMPANY,<br><br>    Plaintiff,<br><br>vs.<br><br>(1) THOMAS FRITZ D/B/A KTJ ESCORT;<br>(2) LANDSTAR RANGER, INC.;<br>(3) NELLIE GARCIA; (4) FELICIA ROJAS;<br>(5) KRISTIAN PESCADERO; and<br>(6) BOBBY RHODES, JR.<br><br>    Defendants. | No. 19-cv-036-SPS |

**COMPLAINT FOR DECLARATORY JUDGMENT**

The Plaintiff, Shelter Mutual Insurance Company ("Shelter"), by and through its attorneys of record, Steidley & Neal, P.L.L.C., respectfully files its Complaint for Declaratory Judgment, and in support states as follows:

**I. JURISDICTION AND VENUE**

1. This is an action for declaratory relief that is filed pursuant to the Declaratory Judgment Act, 28 U.S.C.§ 2201, to determine a real, existing and judiciable controversy that currently exists between the parties with respect to Shelter's obligations under liability coverage of a commercial general liability policy, as described below.

2. Shelter is a corporation organized and existing under the laws of Missouri, with its principle place of business in Missouri.

3. At all relevant times, Defendant Thomas Fritz d/b/a KTJ Escort has been a citizen of the State of Oklahoma, who resides within the Eastern District of Oklahoma.

4. At all relevant times, Defendant Landstar Ranger, Inc. is a foreign corporation, with its principal place of business in the State of Florida.

5. At all relevant times, Defendants Nellie Garcia, Felicia Rojas and Kristian Pescadero have resided in and are citizens of the State of Texas.

6. At all relevant times, Defendant Bobby Rhodes, Jr. has been a resident of the State of Texas.

7. The insurance coverage dispute that is the subject of this action arises from a contract that was issued to Defendant Thomas Fritz d/b/a KTJ Escort in Coalgate, Oklahoma, which names Thomas Fritz d/b/a KTJ Escort as the named insured, and Landstar Companies, Inc., an additional insured under that Oklahoma policy, by requirement of Landstar's contract with KTJ Escort, an Oklahoma entity. Any interest of Defendants Garcia, Rojas and Pescadero for insurance proceeds arises from and is related to the insurance contract issued in Oklahoma and based on claims asserted against Oklahoma citizen, Thomas Fritz d/b/a KTJ Escort.

8. Pursuant to 28 U.S.C. § 1332, this Court has subject matter jurisdiction over this action. The principal amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest, attorney fees, and costs. Furthermore, the insurance coverage dispute that is the subject matter of this action is between citizens and entities of different states. There is complete diversity of citizenship.

9. Venue is proper in the Eastern District of Oklahoma pursuant to 28 U.S.C. §1391(b) and 28 U.S.C. § 116.

10. Each of the Defendants named in this Complaint have an interest in the outcome of this declaratory judgment action, and are proper parties to this action.

## II.   THE SUBJECT INSURANCE POLICY

11. Shelter issued a General Liability Insurance Policy to Thomas Fritz, d/b/a KTJ Escort, policy number 35-31-9148665-1, in Coalgate, Oklahoma, with effective dates of March 5, 2017 to March 5, 2018. ("The policy"). A copy of the subject policy is attached as Exhibit 1.

12. The policy provided Commercial General Liability Coverage. The general aggregate coverage provided under Coverage A of the policy is subject to $1,000,000 liability coverage limits and is subject to all the terms, conditions, and exclusions contained within the policy. The policy provides Medical Expense coverage of $5,000 for any one person, subject to all the terms, conditions, and exclusions contained within the policy.

13. The policy contains the following terms:

SECTION I – COVERAGES

COVERAGE A – BODILY INJURY AND PROPERTY

DAMAGE LIABILITY

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. . . .
   
   ***
   
   b. This insurance applies to "bodily injury" and "property damage" only if:
      (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
      (2) The "bodily injury" or "property damage" occurs during the policy period;

   ***

   e. Damages because of bodily injury" include damages claimed by any person, organization, for care, loss of services or death resulting at any time from the "bodily injury."

   (Policy, p. 1, Section I, (1)).

3

\*\*\*

### COVERAGE C – MEDICAL PAYMENTS

1. **Insuring Agreement**
   a. We will pay medical expenses as described below for "bodily injury" caused by an accident:
      (1) On premises you own or rent;
      (2) On ways next to premises you own or rent;
      (3) Because of your operations; provided that:
         (a) The accident takes place in the "coverage territory" and during the policy period;
         (b) The Expenses are incurred and reported to us within one year of the date of the accident; and
         (c) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.
   b. We will make these payments regardless of fault. These payments will not exceed the applicable limits of insurance. We will pay reasonable expenses for:
      (1) First aid administered at the time of an accident;
      (2) Necessary medical, surgical, X-ray and dental services, including prosthetic devices; and
      (3) Necessary ambulance, hospital, professional nursing and funeral services.
2. **Exclusions**
   We will not pay expenses for "bodily injury""
   **g. Coverage A Exclusion**

   Excluded under Coverage A.

\*\*\*

14.  The policy provides further Supplementary Payments, Coverage A and B, incorporated herein which provide in part:

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

\*\*\*

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

4

a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control of the defense of that indemnitee and against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:
(1) Agrees in writing to:

(a) Cooperate with us in the investigation, settlement or defense of the "suit";

(b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c) Notify any other insurer whose coverage is available to the indemnitee; and

(d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(2) Provides us with written authorization to:

(a) Obtain records and other information related to the "suit"; and

(b) Conduct and control the defense of the indemnitee in such "suit."

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.  Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

15. The policy provides that ""You" and "your" are defined to refer to the Named Insured shown on the declarations, and any other person or organization qualifying as a named insured. (Policy, p. 1). Thomas Fritz d/b/a KTJ Escort is identified in the Declarations as the Named Insured under the Policy.

16. Under the policy, "Insured" means any person qualifying as an insured under the Policy's Section II, Who Is An Insured. Section II- Who Is An insured provides:

> SECTION II – WHO IS AN INSURED:
>
> 1. If you are designated in the Declarations as:
>
> a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.
>
> **2.** Each of the following is also an insured:
>
> a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees"," other than either of your "executive officers" (if you are an organization other than  partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:
>
>> (1) "Bodily injury" or personal advertising injury":
>>
>>> (a) To you, to you partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business.
>
> ***

17. Under the policy definitions, the following terms are defined in relevant part:

> **SECTION V – DEFINITIONS**

2. "Auto" means:

    a. A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

    b. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

    However, "auto" does not include "mobile equipment."

\*\*\*

5. "Employee" includes a "leased worker." "Employee" does not include a "temporary worker". (Policy, p. 9, Section V(5)).

\*\*\*

9. "Insured contract" means;

    a. a contract for a lease of premises. . . . .

    b. A sidetrack agreement;

    c. Any easement or license agreement, except in construction or demolition operations on or within 50 feet of a railroad;

    d. An obligation, as required by ordinance to identify a municipality, except in connection with work for a municipality;

    e. An elevator maintenance agreement;

    f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

    Paragraph f. does not include that part of any contract or agreement:

        (1) That indemnifies a railroad . . . .

        (2) That indemnifies an architect, engineer, or surveyor. . . .

        (3) Under which the insured, if an architect, engineer, or surveyor, assumes liability for an injury or damage. . . .

10. "Leased worker" means "a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business." "Leased worker" does not include a "temporary worker."

7

11. "Loading or unloading" means the handling of property:

a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

b. While it is in or on an aircraft, watercraft or "auto"; or

c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a handtruck, that is not attached to the aircraft, watercraft or "auto."

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b. Vehicles maintained for use solely on or next to premises you own or rent;

c. Vehicles that travel on crawler treads;

d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

(1) Power cranes, shovels, loaders, differs or drills; or

(2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

e. Vehicles not described in Paragraph **a., b., c.** or **d.** above that are maintained primarily to provide mobility to permanently attached equipment of the following types:

(1) Air compressors, pumps and generators, including spraying, welding, building, cleaning, geophysical exploration, lighting and well servicing equipment; or

(2) Cherry pickers and similar devices used to raise or lower workers;

f. Vehicles not described in Paragraph **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

(1) Equipment designed primarily for:
    (a) Snow removal;

8

    (b) Road maintenance, but not construction or resurfacing; or
    (c) Street cleaning;
  (2) Cherry pickers and similar devices mounted on an automobile or truck chassis and used to raise or lower workers; and
  (3) Air compressors, pumps and generators, including spraying, welding, building, cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos."

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

***

19. "Temporary worker" is a "person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions." *Id*. at p. 11, Section V(19).

22. "Your work":

 a. Means:

 (1) Work or operations performed by you or on your behalf; and

 (2) Materials, parts or equipment furnished in connection with such work or operations.

 b. Includes:

 (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

 (2) The providing of or failure to provide warnings or instructions.

18. The policy contains a CGL Endorsement CG which amends Section II – Who Is An Additional Insured as follows:

 A. **Section II – Who is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damages" or "personal advertising injury" caused in whole or in part by:
1. Your acts or omissions; or
2. The acts or omissions of those acting on your behalf;

9

> in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.
>
> However:
>
> 1. The insurance afforded to such additional insured only applies to the extent permitted by law; and
> 2. If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

(CG 20 10 0413, Additional Insured – Endorsement).

19. Landstar Companies is listed on the policy declarations as an additional insured. KTJ Escort's contract with Landstar Ranger, Inc. defines Landstar Companies to include Landstar Ranger, Inc.

20. The Policy contains exclusions which state, in part:

> **Coverage A – Bodily Injury and Property Damage Liability**
>
> **2. Exclusions**
>
> This insurance does not apply to:
>
> ***2.b.   Contractual Liability***
>
> "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:
>
> (1)   That the insured would have in the absence of the contract or agreement; or
>
> (2)   Assumed in a contract or agreement that is an "insured contract", provided that the "bodily injury" or property damage" occurs subsequent to the execution of the contract or agreement. . . .
>
> (Policy, p.
>                           \*\*\*

### 2. g.   *Aircraft, Auto or Watercraft*

An endorsement amends exclusion 2.g. to provide:

**Exclusions:**

This insurance does not apply to:

**(3)   Aircraft (Other than Unmanned Aircraft), Auto or Watercraft**

"Bodily injury" or "property damage' arising out of the ownership, maintenance, use or entrustment to others of any aircraft (other than "unmanned aircraft"), "auto" or watercraft owned or operated by or rented or loaned to any insured.  Use includes operation and "loading or unloading."

This Paragraph **g.(2)** applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "Property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft (other than "unmanned aircraft"), "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This Paragraph **g.(2)** does not apply to:

***

(e) "Bodily injury" or "property damage" arising out of:

(i)   The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law where it is licensed or principally garaged; or

(ii)   The operation of any of the machinery or equipment listed in the Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment."

(Policy, Endorsement CG 21 09 06 15).

21.   The policy provides the following terms regarding other insurance, stated in part:

**4. Other insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverage **A or** B of this Coverage Part, our obligations are limited as follows:

    **a. Primary Insurance**

        This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all other insurance by the method described in Paragraph **c.** below.

    b. **Excess Insurance**

        (1) This insurance is excess over:

            (a) Any of the other insurance, whether primary, excess, continent or on any other basis:

                (i) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";
                \*\*\*

                (iv) If the loss raises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

            (b) Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

(2) When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit." If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

(3) When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

12

>    (a) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and
>
>    (b) The total of all deductible and self-insured amounts under all that other insurance.
>
> (4)    We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and that was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.
>
> **c.    Method of Sharing**
>
> If all of the other insurance permits contributes by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.
>
> If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ration of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

### III. THE UNDERLYING ACCIDENT

22.    On or about April 10, 2017, non-party Curtis Blake Grimm was involved in a motor vehicle accident with Defendants Nellie Garcia, Felicia Rojas, and Kristian Pescadero on U.S. I0 Access Road in Bexar County, Texas.

23.    On May 5, 2015, Defendants Garcia, Rojas and Pescadero filed a civil action in Bexar County, Texas, Cause No. 2017-CI08047("Texas action") arising from the accident against Defendant Landstar Ranger, Inc. and non-party Curtis Blake Grimm.  Through subsequent amendments to their Petition, Garcia, Rojas, and Pescadero have added as Defendant KTJ Escort-N-Truck Security, Defendant Bobby Rhodes, and non-parties Cross Country Escort Service, and Safety First Permit Solution, LLC.

24. In their Third Amended Petition in the Texas action, Garcia, Rojas, and Pescadaro allege that Curtis Blake Grimm was driving a tractor-trailer owned by Landstar Ranger, Inc., and was acting in the scope of his employment with Landstar at the time of the accident. Garcia, Rojas and Pescadero allege that Mr. Grimm lost control of his load which caused it to come off the dolly supporting the rear of the load, and that Grimm dragged the load on the access road of Highway 90, leaving the dolly behind.

25. Garcia, Rojas and Pescadero allege in the Texas action that the tractor-trailer involved in the accident was accompanied by an escort vehicle driven by Bobby Rhodes. They allege that the driver of the escort vehicle was negligent, and caused Grimm to take evasive action which partially contributed to subsequent series of events that caused the load to become unsecured from the dolly. Garcia, Rojas and Pescadaro allege they collided with the dolly and sustained severe injuries to their person.

26. Garcia, Rojas and Pescadero allege in the Texas action that Cross Country, KTJ Escort, Safety First Permit Solutions and Bobby Rhodes were jointly contracted with Landstar for escort services for the load contracted by Grimm.

27. Garcia, Rojas and Pescadero also allege in the Texas action that non-party Bobby Rhodes was an employee of KTJ Escort Services, Cross Country, and Safety First Permit Solutions.

28. The Third Amended Petition asserts a claim of negligence against Bobby Rhodes, KTU Escort, Cross Country and Safety First Permit Solutions, LLC for the alleged negligence of Rhodes, based on the doctrine of respondeat superior.

28. The Third Amended Petition in the Texas action asserts a claim of Negligence against Landstar Ranger, Inc. under the doctrine of respondeat superior for the acts of Curtis Grimm.

29.     The Third Amended Petition in the Texas Action asserts claims of negligence against Landstar for:

> a.  Negligent hiring of Defendant Grimm, in violation of 49 C.F.R. § 391.11, 391.21, 391.23 and 391.31.
> b. Negligent training of Defendant Grimm;
> c.  Negligent supervision and monitoring of Defendant Grimm;
> d. Defendant Landstar failed to implement and or enforce adequate safety programs for the prevention of collision by Commercial Defendant's employees in the violation of motor carrier fleet industry standards;
> e. Defendant Landstar failed to have an adequate safety program in place to ensure that an effective ongoing monitoring and training of its drivers occurred;
> f. Defendant Landstar had a cellular phone policy in place but engaged in the practice and pattern of failing to enforce such policy and to allow its employees to knowingly violate that cellular policy;
> g.  Defendant Landstar failed to ensure Defendant Grimm was trained or aware of specific company policies for transporting windmill towers; and
> h.  Any such other acts of negligence as are indicated from the facts alleged herein and that may be shown at trial.

30.     The Texas action asserts a claim of negligence and negligence per se against Curtis Grimm, individually and as an employee of Landstar, alleging his "negligent, careless and reckless disregard of duty by Defendant Grimm individually and as agent, servant, and/or employee of Commercial Defendant consisted of, but is not limited to, the following acts or omissions:

> a. in failing to keep a proper lookout or such lookout that a person of ordinary prudence would have maintained under same or similar circumstances; in obstructing a highway contrary to what an ordinary person would have done under the same or similar circumstances, in violation of Texas Transportation Code § 545.302 and Texas Penal code § 42.03.
> b.  in failing to make safe decisions while driving.
> c.  in failing to activate hazard warning devices within 10 minutes behind the obstructing dolly in violation of 49 C.F.R. § 392.22
> d.  in driving his vehicle in willful or wanton disregard for the safety of persons and/or property, including Plaintiffs and their vehicle in violation of Texas Transportation Code § 545.401;
> in failing to communicate with the escort vehicle to ensure safe entrance onto Highway 90 from the on ramp;
> f.  in failing to safely secure his cargo in violation in violation of [sic] of 49 C.F.R. § 393.106; and
> g.     any such other acts of negligence as are indicated from the facts alleged herein and that may be shown at trial.

15

31. The Texas action asserts a claim of gross negligence against the collective "Defendants".

32. Garcia, Rojas, and Kristian Pescadero allege in the Texas action that they have suffered bodily injury and seek monetary relief of over $1,000,000 dollars in monetary damages. They seek actual damages and exemplary damages, together with prejudgment interest, post judgment interests, costs of court, and other further relief to which they may be entitled at law or equity.

33. Mr. Fritz d/b/a KTJ Escort tendered the lawsuit to Shelter. Shelter has and continues to provide a defense to Mr. Fritz, but has reserved the right to deny coverage to Mr. Fritz d/b/a KTJ Escort for both defense and indemnity.

34. Shelter has alerted Landstar of its additional insured status and has offered a defense, but has reserved the right to deny coverage to Landstar for both defense and indemnity.

35. Shelter has alerted of the claim against him and the allegation that he is employed by KTJ Escort, and has offered a defense, but has reserved the right to deny coverage to Rhodes for both defense and indemnity.

### IV. SHELTER'S REQUEST FOR DECLARATORY JUDGMENT

36. Shelter denies that either Oklahoma law or the terms of the policy require Shelter to provide liability coverage, either for defense or indemnity, to KTJ Escort, its alleged employees, including Bobby Rhodes, or Landstar for the claims of Garcia, Rojas and Pescadero for claims arising from the April 10, 2018 accident.

37. Shelter seeks a declaration of its rights and obligations under the policy with respect to the underlying suit.

38. Specifically, Shelter requests that the Court enter into a judgment that declares as follows:

a.    That the policy does not provide liability coverage to Thomas Fritz d/b/a KTJ Escort, Landstar Ranger, Inc., or Bobby Rhodes because the claims of Defendants Garcia, Rojas, and Pescadero arise out of the ownership, maintenance, use or entrustment to other of any auto owned or operated by or rented or loaned to any insured, and are excluded from coverage under the policy;

b. That the policy also excludes liability coverage for damages assumed by contract or agreement, that does not meet the definition of insured contract;

c. That Oklahoma public policy would preclude indemnification of Thomas Fritz d/b/a KTJ Escort or Landstar Ranger Inc. for any award punitive damages based on acts of independent negligence by Fritz d/b/a KTJ Escort, independent of any vicarious liability Fritz d/b/a KTJ may have for the acts of an employee in the course and scope of employment;

d. That Oklahoma public policy would preclude indemnification of Bobby Rhodes an award of punitive damages.

e.    That the policy does not provide liability coverage to Landstar Ranger, Inc. for bodily injury or property damage caused by the acts or omissions of Landstar or its employees;

f.    That the policy provides coverage to Landstar Ranger, Inc., as an additional insured, only for bodily injury or property damage caused in whole or in part by Thomas Fritz d/ba/ KTJ's acts or omissions or acts or omission of those acting on behalf of Thomas Fritz d/b/a KTJ in performance of ongoing operations on behalf of Landstar.

g.  That Shelter does not owe defense to Thomas Fritz d/b/a KTJ Escort, Landstar Ranger, Inc., or Bobby Rhodes regarding the claims of Garcia, Rojas, and Pescadero in the Texas Action.

    Respectfully submitted,

    STEIDLEY & NEAL, P.L.L.C.

    By:   s/ Stacie L. Hixon
          Stacie L. Hixon, OBA #19477
          slh@steidley-neal.com
          Douglas R. Scott, OBA #20325
          drs@steidley-neal.com
          CityPlex Towers, 53rd Floor
          2448 East 81st Street
          Tulsa, Oklahoma 74137
          (918) 664-4612 telephone
          (918)664-4133 facsimile

    *Attorneys for Plaintiff*